IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Edward Croteau, )<br>)<br>Plaintiff, )<br>) <br>vs. )<br>)<br>Carolyn W. Colvin, Acting Commissioner )<br>of Social Security, )<br>)<br>Defendant. )<br>_____) | Civil Action No. 5:13-1472-RMG<br><br>**ORDER** |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on April 30, 2014, recommending that the Court reverse the decision of the Commissioner and remand the matter to the agency for further administrative action. (Dkt. No. 21). The Commissioner filed objections to the Report and Recommendation. (Dkt. No. 23). As more fully set forth below, the Court adopts Section I, II(A), (B), (C)(1), (C)(1)(b), (C)(2) and (C)(3) of the Report and Recommendation, reverses the decision of the Commissioner and remands the matter to the agency for further action consistent with this order.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the

Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . .

treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Under the Treating Physician Rule, preference is generally given to the opinions of treating physicians over the opinions of non-examining chart reviewers or one time examiners. 20 C.F.R. § 404.1527(c)(1), (2).

## Discussion

Plaintiff, who was 57 years of age at his alleged onset date of November 6, 2006, had a long history of significant orthopaedic disorders and surgical treatment in the lumbar and cervical spine. The Administrative Law Judge ("ALJ") found that Plaintiff, due to his cervical stenosis, was limited to sedentary work but was nonetheless not disabled because he had skills acquired from his prior work that were transferable to other occupations with jobs existing in significant

numbers in the national economy. Transcript of Record ("Tr.") at 16, 19, 24. In reaching this conclusion, the ALJ relied on the testimony of a Vocational Expert that Plaintiff had transferrable skills from his former relevant work that would allow him to perform the duties of a data entry clerk and data entry clerk supervisor. Tr. 18, 24. The Vocational Expert acknowledged on cross examination that if Plaintiff's impairments included a limitation to performing fine manipulation to one third or less of the work time, there would be no relevant work in the national economy for Plaintiff that would involve transferrable skills from his prior employment. Tr. 19.

A claimant of advanced age (55 or greater) with prior experience performing skilled or semi-skilled work is deemed disabled if limited to sedentary work unless he has transferrable skills to other occupations that require "very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R., Subpart P, Appendix 2 §§ 201(f), 201.10. According to the record evidence, the only occupations with such transferrable skills for Plaintiff would involve the need to use fine motor manipulation more than one third of the work day. The critical question in this claim, therefore, is whether Plaintiff's well documented physical limitations prevent him from performing such fine motor limitations at the level required for these data entry related positions.

Two treating physicians, Dr. Barbara Sarb, a neurologist, and Dr. Sunil Patel, a neurosurgeon, provided written opinions indicating that Plaintiff had significant limitations on his performance of fine motor manipulation. Tr. 469, 481. Dr. Sarb, who issued her opinion on June 14, 2011, opined that Plaintiff's cervical stenosis, carpal tunnel syndrome and numbness in his hands limited the claimant to only occasional fine manipulation of his right and left hand. Tr. 469. She also stated in a separate report of the same day that Plaintiff's lumbar spine

abnormalities imposed significant limitations on his ability to perform work related activities. Tr. 472-73. Dr. Patel, who issued his opinion on July 26, 2011, concluded that Plaintiff was unable to perform fine movements effectively because of numbness in his hands and fingers. Tr. 481. If the opinions of these two treating specialist physicians had been followed, Plaintiff would have been deemed disabled. The ALJ, however, gave little weight to the opinions of the treating specialist physicians and instead relied upon the opinion of Dr. Regina Roman, a one time examiner who conducted a physical examination of the claimant on July 21, 2010. Tr. 375-382. Dr. Roman concluded that Plaintiff had essentially normal fine manipulation skills in his fingers and hands. *Id.*

**A.     Giving "little weight" to the opinions of Dr. Sarb**

The ALJ gave "little weight" to any of Dr. Sarb's opinions, finding that her opinions regarding Plaintiff's ability to perform only occasional fine motor manipulation were inconsistent with "other objective medical evidence of record; specifically, Dr. Roman's assessment . . . ." Tr. 22. The Magistrate Judge found that the ALJ's assessment of Dr. Sarb's opinions was defective because he failed to consider all of the record evidence regarding Plaintiff's fine motor skill abilities beyond Dr. Roman's opinions and did not address and weigh her other opinions. (Dkt. No. 21 at 26-28). The Court agrees with and adopts this portion of the Report and Recommendation regarding the ALJ's failure to properly assess Dr. Sarb's opinions.

The ALJ's weighing of the opinions of Dr. Sarb and Dr. Roman seemed to assume that the physicians were evaluating a patient with a static and essentially identical physical condition at the time of their respective evaluations. The record reveals that subsequent to Dr. Roman's evaluation on July 21, 2010, Plaintiff was seen by Dr. Sarb on January 24, 2011. Dr. Sarb

documented the concerns of Plaintiff's wife that his condition was worsening, and she ordered a repeat cervical spine MRI to evaluate "bilateral hand numbness and left arm aching." Tr. 457, 459. The MRI, performed on February 9, 2011, documented for the first time definitive cord compression at C4-C5. Tr. 459.[1] In a follow up office visit with Dr. Sarb after the repeat MRI, Dr. Sarb documented that Plaintiff was having "hand numbness down the arms and hands" that "has gotten worse." Tr. 461. She diagnosed Plaintiff with "moderate to severe right stenosis at C4-C5" and stated that "[w]e will get him scheduled for follow up with Dr. Patel." Tr. 462. Thereafter, on June 14, 2011, Dr. Sarb issued her opinion indicating Plaintiff could only occasionally perform fine motor manipulation. Tr. 472-73. On remand, the ALJ should consider this intervening record evidence of Plaintiff's worsening cervical spine stenosis and increasing hand numbness and determine whether the inconsistency of Dr. Sarb's and Dr. Ramon's opinions may reflect nothing more than a progression and deterioration of Plaintiff's cervical spine condition.

### B.     Giving "little weight" to the opinions of Dr. Patel's

The ALJ gave "little weigh" to Dr. Patel's opinions set forth in his responses to a questionnaire dated July 26, 2011, noting that they were inconsistent with office notes documenting Plaintiff's condition in 2009. Tr. 21, 481-2. The Magistrate Judge noted in the Report and Recommendation the argument of Plaintiff that the ALJ failed to recognize that the claimant's condition worsened during the period between the 2009 office visit and the 2011

---

[1] The radiologist interpreting the 2011 MRI found that at C4-C5 Plaintiff had compression of the ventral thecal sac and flattening of the cord . . . ." Tr. 459. A 2009 cervical spine MRI had found at C4-C5 "cord effacement without compression." Tr. 331. The 2009 MRI indicated "suspicion for cord compression" at C3, which was not confirmed in the 2011 MRI. Tr. 331, 459.

opinion report. The Magistrate Judge also noted that the Commissioner argued that Plaintiff had produced no evidence that Dr. Patel had examined the patient in the two years between the 2009 office visit and the 2011 opinion report. (Dkt. No. 21 at 25).

The Commissioner is clearly correct that the 2009 office note describes a far less impaired patient than the 2011 opinion report. What is not clear to the Court is the basis of Dr. Patel's 2011 opinions. Dr. Sarb documents in her February 18, 2011 office note that she intended to refer Plaintiff back to Dr. Patel. Tr. 462. Dr. Patel's report of July 26, 2011 documents significant limitations in Plaintiff's hands and fingers highly consistent with the recent evaluations by Dr. Sarb and the February 9, 2011 MRI. Tr. 481-82. A gap exists in the record regarding the source of the information relied on by Dr. Patel in reaching his opinions set forth in the July 26, 2011 report, which could be highly probative regarding the weight that should be accorded those opinions. For instance, had he examined the patient, reviewed the recent cervical spine MRI and/or had access to Dr. Sarb's office notes? In light of his treatment history and specialized expertise in neurosurgery, access to some or all of this information may give more credence to Dr. Patel's July 2011 opinions.

A claimant in a Social Security disability claim has the duty to furnish all relevant medical evidence and to carry the burden of proving that he or she is disabled. 20 C.F.R. § 404.1512(a). Congress, however, imposes upon the Commissioner to "make every reasonable effort" to obtain "all medical evidence" from treating physicians. 42 U.S.C. § 423(d)(5)(B). This requires the ALJ to "develop a full and fair record" and to correct any significant gaps or "deficiencies" in the record. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991); *Hannah-Walker v. Colvin*, No. 2:12-cv-61-PRC, 2013 WL 5320664, at *15 (N.D. Ind. Sept. 23, 2013);

*Rivera v. Astrue*, No. 10 CV 4324(RJD), 2012 WL 3614323, at *12 (E.D.N.Y. Aug. 21, 2012); *Washington v. Astrue*, C/A No. 3:08-cv-2631-DCN, 2010 WL 3023048, at *3 (D.S.C. July 29, 2010). This affirmative duty exists where "such evidence is necessary to a fair determination of the claim." *Milton v. Schweiker*, 669 F.2d 554, 556 (8th Cir. 1982); *Tucker v. Bowen*, No. CV-87-3487, 1989 WL 10564, at *4 (E.D.N.Y. Feb. 2, 1989). While the ALJ's duty to complete the record is heightened when the claimant is *pro se*, the "duty exists even when the claimant is represented by counsel. *Rivera*, 2012 WL 3614323, at *12.

Further, a regulation in effect at the time Plaintiff applied for disability required that where information from a treating physician "is inadequate for us to determine whether you are disabled . . . [w]e will first recontact your treating physician . . . to determine whether additional information is readily available." 20 C.F.R. § 404.1512(e)(1). This regulation was modified following the Plaintiff's filing of his disability application and remains binding on the Commissioner. It is notable that when modifying this regulation for cases filed after January 23, 2012, the Commissioner made clear that in the future "we would still expect adjudicators to recontact a person's medical source" when "recontact is the most effective and efficient way to resolve an inconsistency or insufficiency." 77 Fed. Reg. 10651 (Feb. 23, 2012).

On remand, the ALJ should recontract Dr. Patel and determine what information he relied upon in issuing his July 2011 opinion report. This newly received information should then be considered in weighing his opinions and reconciling then with other expert opinions in the record, as provided under the Treating Physician Rule.

## Conclusion

Based on the foregoing, the Court adopts Section I, Section II(A), (B), (C)(1)(b), (C)(2),

-8-

and (C)(3) of the Report and Recommendation, directs further review by the agency as set forth above, reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g), and remands the matter to the agency to take action consistent with this order.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

May _14_, 2014
Charleston, South Carolina